Robert J. Feldhake, Esq. [SBN 107380]
Kevin E. Mueller, Esq. [SBN 186169]
Joseph K. Jeffrey, Esq. [SBN 294147]
THE FELDHAKE LAW FIRM, APC
650 Town Center Drive, Suite 1590
Costa Mesa, California 92696
Tel.: (714) 352-8230
Fax: (714) 352-8270

Attorneys for Plaintiff, BRUCE W. S. HOLMES and
HOLMES CHIROPRACTIC DEFINED BENEFIT PLAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| BRUCE W. S. HOLMES, an individual; and HOLMES CHIROPRACTIC DEFINED BENEFIT PLAN, an employee benefits plan under ERISA,<br><br>Plaintiffs,<br><br>v.<br><br>VELA, MEHRINGER & KARGODORIN, a California corporation; and FARMER & RIDLEY, a California limited liability partnership,<br><br>Defendants. | CASE NO. 2:16-CV-03728<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**(I) BREACH OF FIDUCIARY DUTY UNDER ERISA; AND**<br><br>**(II) PROFESSIONAL NEGLIGENCE.**<br><br>**JURY DEMAND** |

Plaintiffs, BRUCE W. S. HOLMES ("Plaintiff" or "Plaintiff Holmes"), a participant in the Holmes Chiropractic Defined Benefit Plan (the "Plan"), and the HOLMES CHIROPRACTIC DEFINED BENEFIT PLAN, an employee benefits plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), by and through their attorneys, and for their Complaint for Damages against VELA, MEHRINGER & KARGODORIN ("VMK"), a California corporation, and

-1-
COMPLAINT FOR DAMAGES FOR BREACH OF FIDUCIARY DUTY AND
PROFESSIONAL NEGLIGENCE

FARMER & RIDLEY ("Farmer & Ridley"), a California limited liability partnership, state and allege:

**JURISDICTION AND VENUE**

1. This action arises under ERISA, as amended, 29 U.S.C. §§ 1001, *et seq.*, and is brought in relevant part by Plaintiffs, a plan participant and the Plan, under ERISA §502(a)(2) and 29 U.S.C. §1109 to recover any losses to the plan resulting from each breach by VMK, the Plan's Third Party Administrator, and to restore to the Plan any profits of VMK which have been made through the use of assets of the Plan by VMK, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

2. This Court has jurisdiction over this action pursuant to ERISA §502(a)(2), 29 U.S.C. §1132(a)(2).

3. The Plan is an employee benefit plan within the meaning ERISA §3(3), 29 U.S.C. §1002(3), which is subject to the provisions of Title I of ERISA pursuant to ERISA §4(a), 29 U.S.C. §1003(a).

4. Venue of this action lies in the Western Division of the Central District of California, pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), because the Plan was administered in the County of Los Angeles, California, within this district.

5. The Plan was sponsored by Bruce W. S. Holmes, DC of Holmes Chiropractic for the benefit of employees of Holmes Chiropractic.

COMPLAINT FOR DAMAGES FOR BREACH OF FIDUCIARY DUTY AND PROFESSIONAL NEGLIGENCE

6. Plaintiffs also retained Farmer & Ridley to assist in audit representation and assess the quality of the Plan's administration under VMK. During this engagement, Farmer & Ridley also failed to advise Plaintiffs as to several areas of the administration of the Plan, and failed to provide advices as to the availability Plan options to address underfunding and tax liabilities.

## PARTIES

7. Plaintiff Holmes is, and at all relevant times, was a resident of the state of California. Plaintiff is the owner of Holmes Chiropractic, and as such, a participant in the Plan under ERISA §502(a)(2) and 29 U.S.C. §1109.

8. The Plan is, and at all times was, since approximately January 1, 1998, a pension plan or program established and maintained by Holmes Chiropractic for the purpose of providing its employees and their beneficiaries certain benefits upon retirement.

9. At all relevant times, VMK was the Third Party Administrator of the Plan, was a "named fiduciary" to the Plan within the meaning of ERISA §402(a)(2), 29 U.S.C. §1002(21)(A), was a fiduciary to the Plan within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A), and a party in interest to the Plan within the meaning of ERISA §3(14)(A) and (C), 29 U.S.C. §1002(14)(A) and (C).

10. At all relevant times, Farmer & Ridley was a limited liability partnership for the practice of law in the County of Los Angeles, State of California. At all relevant times, Farmer & Ridley purported to specialize in the area of tax and pension plan representation, including representation of parties

being audited by the Internal Revenue Service ("IRS") in connection with pension plan-related issues.

## **FACTUAL ALLEGATIONS COMMON**
## **TO ALL CAUSES OF ACTION**

11. On January 1, 1998, Plaintiff Holmes established the Plan for the benefit of himself and for the employees of Holmes Chiropractic. Shortly before that time, Plaintiff engaged VMK to act as the Plan's Third Party Administrator, with Dennis Mehringer assigned by VMK to provide services to Plaintiff. As such, VMK acted as Plaintiffs' fiduciary in managing the Plan and advising Plaintiffs on taking action to make sure the Plan was compliant with all applicable state and federal laws, and to assure that proper advices were provided as issues would arise and provide direction to Plaintiffs on how to assure compliance and also to avoid unexpected financial demands or tax exposures in connection with the Plan. Plaintiffs trusted VMK and its agents and/or employees to act in Plaintiffs' best interests while acting in its capacity as third party administrator of the Plan.

12. In or about 2004 or 2005, Plaintiff Holmes' son fell ill. Plaintiff Holmes and his wife spent most of their time with their son in the hospital, contributing to Plaintiff Holmes' lack time being spent on his chiropractic practice for income generation purposes. Accordingly, VMK advised and Plaintiff Holmes acted on that advice to approve freezing the Plan as to new participants in October 2005.

13. Part of VMK's duties in administering the Plan was to provide proper notices to the Internal Revenue Service ("IRS"), ensure that minimum

funding standards were met, and evaluate whether it would be beneficial to keep the plan going (although it was frozen) or to terminate the Plan to avoid any additional tax liabilities and penalties for noncompliance and to avoid funding deficiencies or resolve them on behalf of Plaintiffs to minimize financial exposure, funding requirements and tax related penalties. On information and belief, despite its undertaking, VMK and its agents and/or employees never provided Plaintiffs any advice on the benefits of terminating the Plan and options on how to do so earlier than approximately 2012 (when VMK terminated Plaintiffs as clients) to avoid tax liabilities and penalties for a failure to meet the minimum funding requirements.

14. In or about the years 2008 and/or 2009, Plaintiffs suffered large losses to the assets of the Plan due to the recessionary economy. The lost assets of Plaintiff Holmes and his wife alone (who is also a participant of the Plan) totaled an estimated $1,472,000.00 with interest. In addition, the other participants in the Plan also had significant losses in amounts to be proven at trial. Had VMK advised Plaintiffs to terminate the Plan before the recessionary economy, but after deciding to freeze it, the Plan would have avoided these losses.

15. On or about April 3, 2012, Plaintiff Holmes received a notice from the IRS indicating the Plan was being audited for activity taking place in 2010, when VMK was still acting as Third Party Administrator for the Plan. Plaintiff Holmes secured counsel to represent him during the audit, and ultimately hired Farmer & Ridley for audit representation. Per the Farmer & Ridley Retainer Agreement, Farmer & Ridley agreed to "[deal] with the IRS on [the audit] issue and advis[e] [Plaintiff] of any proposals that we think are appropriate to resolve the issues raised by the IRS. In addition, we will receive the recent history of

COMPLAINT FOR DAMAGES FOR BREACH OF FIDUCIARY DUTY AND PROFESSIONAL NEGLIGENCE

[Plaintiff's] defined benefit plan and the manner in which it was administered by [Plaintiff's] Third Party Administrator, with a view toward determining the quality of that administration."

16. By correspondence dated March 19, 2013, the IRS identified qualification and operational failures jeopardizing the status of the Plan. The IRS specifically found that (a) the Plan had not been timely amended to comply with changes in the laws affecting a retirement plan, and (b) the Plan was "Top-Heavy", and not making Top-Heavy minimum contributions per Regulation 1.416-1, T-5. In addition, the letter informed Plaintiff Holmes that he could be assessed a penalty worth one hundred percent (100%) of the excise taxes due, in addition to the outstanding balance of excises taxes due. Due to Plaintiff Holmes' failure to make minimum contributions to the Plan, Plaintiffs were assessed excise taxes for ten percent of the contributions not made. As a result of the excise taxes due, and interest on those amounts owing, Plaintiff Holmes must now pay $315,522.53 in excise taxes to the IRS to make the Plan current.

17. In or about May 2013, Farmer & Ridley advised Plaintiff Holmes that termination was possible, but only if he could make up the funding deficiencies of the Plan prior to termination. Plaintiff Holmes informed Farmer & Ridley that he was not able to afford to bring the Plan current during this time. Farmer & Ridley provided no advices on how to solve this issue. In November 2013, Farmer & Ridley informed Plaintiff Holmes that his audit process was complete, and their representation of Plaintiff Holmes was terminated.

18. During Farmer & Ridley's representation, Plaintiff Holmes was never informed that paying all the excise taxes and interest, then terminating the Plan, could waive the one-hundred percent (100%) excise tax penalty under 26

-6-

U.S.C. §4971(b). Plaintiff Holmes was also never advised by Farmer & Ridley that waiving his and his wife's benefits under the Plan could be effectively used as a "set-off" against the funding deficiencies for the non-highly compensated employees under the Plan, or that mechanisms existed to terminate the Plan without meeting minimum funding requirements which would have allowed for earlier Plan termination and minimized the mounting exposures for Plaintiffs for funding, tax and related obligations.

19. Independently, VMK failed to advise Plaintiffs as to mechanisms available for Plan termination without minimum funding obligations being met, and avoidance of certain subsequent excise tax related penalties and interest. Through the end of VMK's representation, Plaintiffs were never advised that paying all the excise taxes and interest, then terminating the plan, could waive the one-hundred percent (100%) excise tax penalty under 26 U.S.C. §4971(b). Plaintiffs were also never advised that mechanisms existed to terminate the Plan without meeting minimum funding requirements, which would have allowed for earlier Plan termination and minimized mounting exposures for Plaintiffs for funding, tax and related obligations.

20. In or about November 2013, Farmer & Ridley advised Plaintiff Holmes that the IRS had indicated it was planning on assessing Plaintiffs the 100% penalty in addition to the balance of the taxes due. While a legally permissible penalty, Plaintiff Holmes was again not advised by Farmer & Ridley that section 3002(b) of ERISA provides a method by which to waive the 100% excise tax penalty. In fact, it was not until May 29, 2015 that Marjorie Waldman of the IRS advised Plaintiff Holmes of the steps to be taken to waive the 100% tax penalty and to terminate the Plan without minimum funding obligations. At least one of the steps involved in waiving the taxes was termination of the Plan.

# COUNT I

## [Failure to Prudently and Loyally Advise Plaintiffs as to Management of the Plan's Assets – Breaches of Fiduciary Duties in Violation of ERISA § 404 and § 405 Against VMK]

21. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 20 inclusive, and incorporate them as though fully set forth.

22. ERISA § 502(a), 29 U.S.C. § 1132(a), authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. Section 409 requires "any person who is a fiduciary . . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such plan any losses to the plan . . ." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . ."

23. At all relevant times, as alleged above, VMK was a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) in that it exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

24. VMK's duty of loyalty and prudence also obligates it to speak truthfully to participants, not to mislead them regarding the Plan or its assets, and to disclose information that participants need in order to exercise their rights and interests under the Plan. This duty to inform participants includes an obligation to provide participants and beneficiaries of the Plan with complete and accurate information, and to refrain from providing inaccurate or misleading information, or concealing material information, regarding the Plan's assets such that

participants can make informed decisions with regard to the prudence of management of such assets made available under the Plan.

25. VMK breached its duties to prudently and loyally manage the Plan's assets. During its tenure as Third Party Administrator, VMK knew or should have known that, as described herein, not terminating the plan soon after it was frozen could cause funding deficiencies and further tax liabilities and penalties. Further, VMK knew or should have known and advised Plaintiffs that their tax penalties could have been waived upon payment of the back taxes and interest, and subsequent termination of the Plan. Further, VMK knew or should have known that termination was possible through IRS procedures without minimum funding obligations being first met, which would prevent Plaintiffs from incurring further liabilities. VMK failed to take any meaningful steps to protect Plan participants from the inevitable losses that they knew or should have known would ensue as a result.

26. As a direct and proximate result of VMK's breaches of its fiduciary duties alleged herein, the Plan, and indirectly Plaintiffs, suffered significant losses.

27. With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the participants and beneficiaries in the Plan would not have managed the Plan's assets in the challenged manner and, where alternative management options were available, that the assets managed in the challenged manner would have instead been managed in the most profitable and prudent manner available. In this way, the remedy restores the value of the Plan's assets to what they would have been if the Plan had been properly administered.

28. Plaintiffs are therefore entitled to relief from the VMK in the form of: (1) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (2) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a), 29 U.S.C. §§ 1109(a) and 1132(a); (3) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (4) taxable costs; (5) interest on these amounts, as provided by law; and (6) such other legal or equitable relief as may be just and proper.

## COUNT II

### [Professional Negligence Against Farmer & Ridley]

29. Plaintiff s repeat and reallege each and every allegation contained in Paragraphs 1 through 28 inclusive, and incorporate them as though fully set forth.

30. Plaintiff Holmes retained Farmer & Ridley in May 2012 to advise him on the following: dealing with the IRS throughout the audit; advising Plaintiff Holmes of proposals to resolve issues raised by the IRS; and reviewing the history of the Plan's administration with a view towards determining the quality of that administration.

31. By virtue of the aforementioned retention, Farmer & Ridley owed a special duty of care to Plaintiff Holmes, to use the degree of care, skill, prudence and diligence as such members of the legal profession commonly possess and exercise in providing legal representation as to Plaintiff Holmes' 2012 audit,

providing advice and proposals to resolve issues brought up by the IRS, and to provide advice as to the quality of the Plan administration through VMK.

32. Farmer & Ridley breached their duty to Plaintiff Holmes by virtue of misadvising him as to the following, but not limited to, options regarding the audit and administration of the Plan: (1) termination of the Plan was one way to avoid a potential 100% excise tax penalty under the Code of Federal Regulations; and (2) pursuing termination without meeting minimum funding requirements through available IRS procedures.

33. As a direct and proximate result of the aforementioned facts, Plaintiff Homes has suffered losses in the form of excise tax liability, related penalties and interest on those amounts, to his and the Plan's damage in an amount to be established at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:

A. Actual monetary damages in the amount of any losses the Plan suffered, with such losses to be allocated among the Participants' individual accounts in proportion to the accounts' losses;

B. General damages according to proof at trial;

C. Costs pursuant to 29 U.S.C. § 1132(g);

D.  Attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and,

E.  Such other relief as the Court may deem just and proper.

DATED: May 27, 2016                  THE FELDHAKE LAW FIRM, APC

By: _____
Robert J. Feldhake
Attorneys for Plaintiffs Bruce W. S. Holmes and the Holmes Chiropractic Defined Benefit Plan

## JURY TRIAL DEMANDED

Plaintiffs, by and through their attorneys, The Feldhake Law Firm, APC, alleges the above described allegations. The allegations contained herein are based on the investigation of counsel, except for those allegations pertaining to Plaintiffs, which are based upon personal knowledge, information and belief. Plaintiffs may, after discovery and/or disclosure proceedings in this case, seek leave to amend this Complaint to add new parties or claims. Accordingly, Plaintiffs hereby request a trial by jury in this matter to the full extent allowable under the applicable law.

DATED: May 27, 2016                  THE FELDHAKE LAW FIRM, APC

By: _____
Robert J. Feldhake
Attorneys for Plaintiffs Bruce W. S. Holmes and the Holmes Chiropractic Defined Benefit Plan

H:\2124 - Holmes\2124.001\PLDGS\Complaint-USDC (052716).doc

COMPLAINT FOR DAMAGES FOR BREACH OF FIDUCIARY DUTY AND PROFESSIONAL NEGLIGENCE